UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RICKY D. CARIKER,                )    NO. ED CV 08-0239-CT
                                 )
          Plaintiff,             )    OPINION AND ORDER
                                 )
     v.                          )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                                 )
          Defendant.             )
_____)

     For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

                    **SUMMARY OF PROCEEDINGS**

     On February 21, 2008, Ricky D. Cariker, ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act").  The matter was originally assigned to, and the parties consented proceed before, Magistrate Judge Johnson.  On December 3, 2008, the parties filed a joint stipulation.  On July 15, 2009, the matter was re-assigned

1    to and, shortly thereafter, the parties consented to proceed before the
2    undersigned.

### SUMMARY OF ADMINISTRATIVE RECORD

4    1.   **Proceedings**

5        On July 17, 2003, plaintiff filed applications for disability
6    insurance benefits and Supplemental Security Income ("SSI"), (TR 33-41,
7    114),[1] alleging disability since 2002 due to lumbar spine problems.  (TR
8    48.)  The applications were denied initially and upon reconsideration.
9    (TR 28, 31-35.)

10        In 2004, plaintiff requested, (TR 36), and appeared for an initial
11   hearing before an administrative law judge ("ALJ"),(TR 115-30).  On
12   February 9, 2005, the ALJ issued a decision that plaintiff was not
13   disabled, as defined by the Act, and thus not eligible for benefits.
14   (TR 10-18.)   Plaintiff sought Appeals Council review of the ALJ's
15   decision, (TR 8-9), which was denied,(TR 5-7).

16       Plaintiff then filed an action in this court seeking review of the
17   ALJ's decision.  On March 20, 2007, the court remanded the matter for
18   further administrative proceedings, instructing the ALJ to reconsider
19   plaintiff's testimony and, if he determined plaintiff was not credible,
20   to state with specificity the basis for this conclusion.  (TR 158, 159-
21   77.) The ALJ was instructed to consider the other issues plaintiff
22   placed in dispute at that time only as necessary in light of the new
23   evaluation of plaintiff's credibility.  (TR 177.)

24       On November 2, 2007, petitioner, represented by an attorney,

---

26       [1]    "TR" refers to the transcript of the record of
27   administrative proceedings in this case and will be followed by
     the relevant page number(s) of the transcript.

1  appeared and testified at the second hearing.  (TR 217-21.)   The ALJ

2  also considered the testimony of plaintiff's mother, Arlene Applegate,

3  (TR 222-24), and a vocational expert ("VE"), (TR 224-27).   On December

4  2, 2007, the ALJ issued a second decision finding plaintiff not to be

5  disabled, as defined by the Act, and thus not eligible for benefits.

6  (TR 131-42.)

7       Plaintiff did not seek Appeals' Council review within 60 days of

8  the ALJ's decision and, accordingly, the decision stands as the final

9  decision of the Commissioner.  (See TR 132.)

10       Plaintiff subsequently sought judicial review in this court.

11  **2.   <u>Summary Of The Evidence</u>**

12       The February 9, 2005, and December 2, 2007, decisions are attached

13  collectively as an exhibit to this opinion and order and materially

14  summarize the evidence in the case.

15                    **<u>PLAINTIFF'S CONTENTIONS</u>**

16       Plaintiff essentially contends that the ALJ erred in:

17  1.   Failing to sufficiently consider the consultative examiner's

18       findings;

19  2.   Posing an incomplete hypothetical to the vocational expert;

20  3.   Considering lay witness testimony; and,

21  4.   Failing to find that plaintiff's impairments met or functionally

22       equaled a listed impairment.

23                      **<u>STANDARD OF REVIEW</u>**

24       Under 42 U.S.C. §405(g), this court reviews the Commissioner's

25  decision to determine if: (1) the Commissioner's findings are supported

26  by substantial evidence; and, (2) the Commissioner used proper legal

27  standards.   <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).

28
                                 3

Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Sec'y of Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405 (g).

## DISCUSSION

## 1.    The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d) (1) (A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined

4

1   whether the impairment meets or equals one of a number of "listed
2   impairments." If the impairment meets or equals a "listed impairment,"
3   the person is conclusively presumed to be disabled.

4      Fourth, if the impairment does not meet or equal a "listed
5   impairment," it is determined whether the impairment prevents the person
6   from performing past relevant work.   If the person can perform past
7   relevant work, benefits are denied.

8      Fifth, if the person cannot perform past relevant work, the burden
9   shifts to the Commissioner to show that the person is able to perform
10  other kinds of work.   The person is entitled to benefits only if the
11  person is unable to perform other work. 20 C.F.R. §§ 404.1520, 416.920;
12  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

13     Alleged mental impairments are evaluated under the same sequential
14  analysis as physical impairments.  Once the Commissioner determines that
15  a mental impairment exists, the Commissioner must then evaluate the
16  degree of functional loss it causes by rating plaintiff's level of
17  functional limitation in four areas:   (1) activities of daily living;
18  (2) social functioning; (3) concentration, persistence, and pace; and
19  (4) deterioration or decompensation in work or work-like settings.   If
20  an individual's limitations are rated as mild in the first three areas
21  and the individual has had no episodes of deterioration or
22  decompensation, the mental impairment will normally be found to be not
23  severe.  20 C.F.R. §§ 404.1520a, 416.920a.

24  2.   **Issues**

25     A.   **Consultative examiner's opinion (Issue # 1 and # 2)**

26     First, plaintiff urges the ALJ failed to make legally sufficient
27  findings with respect to limitations in his mental functioning opined by

28                                   5

1  consultative examining psychiatrist Romualdo R. Rodriguez, M.D.

2  Relatedly, plaintiff contends the ALJ improperly omitted Dr. Rodriguez's

3  opined limitations from the hypothetical he proposed to the VE.

4      Plaintiff is correct that an ALJ must set out specific and

5  legitimate reasons to reject the opinion of an examining physician, even

6  when it is controverted by other evidence.  See Lester v. Chater, 81

7  F.3d 821, 830-31 ((9th Cir. 1995).  Here, however, the ALJ met this

8  standard.

9      Dr. Rodriguez examined plaintiff one time, in August 2005, at the

10  behest of the Department of Disability Services ("DDS").  (See TR 193-

11  99.)  He found that plaintiff has a depressive disorder and attention

12  deficit hyperactivity disorder ("ADHD").  As a result, he opined,

13  plaintiff suffers from moderate limitations in his ability to maintain

14  concentration, persistence, and pace; to understand, remember, and carry

15  out complex instructions; and to make judgments on complex work-related

16  decisions.  (TR 201.)  He found that plaintiff has only mild

17  limitations, however, in his abilities to relate and interact; to go to

18  work on a daily basis; to adapt to stress; and to work without

19  supervision.  (TR 193.)  And, the doctor found, plaintiff remains wholly

20  unimpaired in his ability to understand; to remember and carry out

21  simple one or two-step job instructions; and to actually do detailed and

22  complex instructions.  (TR 193, 201.)

23      The doctor further opined that plaintiff's symptoms would easily

24  resolve with treatment and if plaintiff would abstain from use of

25  alcohol.  (TR 197, 201.)

26      The ALJ deferred to and adopted Dr. Rodriguez's conclusion to the

27  limited extent that he concluded plaintiff suffers from an "affective

28

disorder," (TR 137), i.e., a disorder that encompasses depressive and hyperactive behaviors, <u>see</u> 20 C.F.R. Part 404, subpt. P, App. 1, § 12.04.

The ALJ concluded, however, that Dr. Rodriguez's opinion was not creditable to the extent that it suggested plaintiff had limitations beyond those encompassed by the mental residual functional capacity ("RFC") found by the ALJ for "unskilled, entry level, SVP-2, object-oriented work." (TR 137.)  The ALJ, accordingly, instructed the VE to consider a hypothetical individual with that mental RFC.  Under the Social Security regulations, "unskilled work" is defined as work that requires "little or no judgment" in performing "simple" duties that can be learned "on the job" and "in a short period of time."  20 C.F.R. §§ 404.1568 (a), 416.968(a) (2008).  A job with a level 2 "SVP," the "specific vocational preparation" or training time required to learn the job, requires training of up to only one month.  <u>Id.</u>

The ALJ set out the following reasons for declining to credit Dr. Rodriguez's opined limitations to any greater extent.  Plaintiff has no "longitudinal history" of mental health contact.  (TR 137.)  He has never been referred to psychiatric treatment.  (<u>Id.</u>)  He has never been prescribed psychotropic medication by his treating physician.  (<u>Id.</u>)  Indeed, as the ALJ noted, Dr. Rodriguez pointedly observed that plaintiff's mental impairments would be readily relieved with appropriate mental health treatment and by his abstaining from alcohol.  (TR 137.)  Plaintiff challenges none of these findings.

These constitute specific and legitimate reasons not to credit the opined limitations of Dr. Rodriguez.  <u>See Andrews v. Shalala</u>, 53 F.3d 1035, 1042 (9th Cir. 1995) (finding that ALJ provided specific and

legitimate reasons to reject opined mental impairments in part because plaintiff consulted the relevant psychiatrist only in connection with his application for benefits and in further part because plaintiff's mental impairments were found to be controllable with medication and abstention from use of marijuana).

Because the ALJ's conclusion that Dr. Rodriguez's opined limitations were not creditable is thus supported by substantial evidence, see Andrews v. Shalala, 53 F.3d at 1042, the ALJ was not required, as plaintiff contends, to include Dr. Rodriguez's opined limitations within the VE hypothetical. The ALJ is required to include only those limitations that are supported by "substantial evidence"; other impairments may properly be excluded. Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

An ALJ may, moreover, properly exclude from the hypothetical any mental limitations that are "mild" and present "no significant interference" with work abilities. Id.; cf. Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 577 (9th Cir. 1988) (existence of minor non-exertional, e.g., mental, impairment precludes use of Medical-Vocational Guidelines only if it will "significantly limit" plaintiff's work abilities). None of the opined limitations here imposed more than a mild limitation on plaintiff's functioning. Indeed, in evaluating whether plaintiff meets the listing for his mental impairments, the ALJ found that there is no credible evidence of record that suggests plaintiff's mental limitations have imposed "marked" restrictions in his activities of daily living, in his maintaining social functioning, or in his maintaining concentration, persistence, and pace. (TR 137-38.) Notably, plaintiff does not challenge this finding.

1    In any event, the court observes that an impairment cannot be
2  considered disabling if, as is the case here, it can be controlled by
3  treatment or medication. See 20 C.F.R. § 404.1530 (a) (providing that
4  social security plaintiff must follow prescribed treatment if it can
5  restore the ability to work); Warre v. Comm'r of Social Sec. Admin., 439
6  F.3d 1001, 1006 (9th Cir. 2006), or by abstention from use of alcohol,
7  Parra v. Astrue, 481 F.3d 742, 749 n.3 (9th Cir. 2007).

8    Accordingly, the ALJ's RFC and hypothetical are supported by
9  substantial evidence, and there is no material legal error here.

10  **B.   Lay witness testimony (Issue # 3)**

11    Plaintiff next contends the ALJ did not adequately consider the
12  testimony of his mother.

13    As plaintiff correctly points out, "descriptions by friends and
14  family members in a position to observe [plaintiff's] symptoms and daily
15  activities have routinely been treated as competent evidence." Sprague
16  v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).   Accordingly, lay
17  testimony "as to a [plaintiff's] symptoms or how an impairment affects
18  ability to work . . . cannot be disregarded without comment." Stout v.
19  Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)(citations
20  omitted).   Rather, "[i]f the ALJ wishes to discount the testimony of the
21  lay witness, he must give reasons that are germane to [that] witness for
22  doing so." Id. (citations omitted).

23    The mere fact that a witness is a family member, alone, does not
24  constitute a germane ground to reject the lay witness's testimony
25  wholesale. See Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). An
26  ALJ may, however, reject a lay witnesses statements if the ALJ finds the
27  witness to be biased.   E.g., Greger v. Barnhart, 464 F.3d 968, 972-73

28

1   (9th Cir. 2006) (the fact that girlfriend's "close relationship" with

2   plaintiff "possibly" influenced her desire to help him was a germane

3   reason to disregard her testimony); <u>Parra v. Astrue</u>, 481 F.3d 742, 751

4   (9th. Cir 2007)(the incongruity between plaintiff's daughter's

5   descriptions of plaintiff's drinking habits and her subjective

6   characterization of these habits as"occasional" and not "excessive"

7   constitutes a germane reason for discounting the credibility of her

8   testimony); <u>Crane v. Shalala</u>, 76 F.3d 251, 254 (9th Cir. 1996) (a

9   witness who helps plaintiff apply for benefits is not objective and ALJ

10  may consider that as a factor in evaluating her testimony).   Other

11  reasons "germane" to a particular witness may include that the witness's

12  testimony is contradicted by the medical evidence of record, <u>Bayliss v.</u>

13  <u>Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005), or that the witness has

14  made contradictory or inconsistent statements, <u>e.g.</u>, <u>Lewis v. Apfel</u>, 236

15  F.3d 503, 512 (9th cir. 2001).

16       Here, plaintiff's mother testified that she sees plaintiff only "a

17  couple" of times a week, and that, at those times, he is in pain, is

18  depressed, and is withdrawn.  (TR 140, 223.)  Consistent with this, the

19  ALJ concluded plaintiff suffers from back pain and depression.    (TR

20  137.)  He found, however, that plaintiff's mother's testimony regarding

21  the "intensity, persistence, and limiting effects" of plaintiff's pain

22  and depression were exaggerated.  (TR 137-38, 141.)  Essentially, the

23  ALJ discounted her testimony for two reasons.

24       First, the ALJ concluded her statements were inconsistent with the

25  medical evidence.  For example, as the ALJ noted, the only treatment

26  plaintiff is undergoing for his pain is to take Norco.  (See TR 139.)

27  Plaintiff "admitted quite freely," however, that Norco "decreases the

28
                                      10

1  pain to a tolerable level." (TR 139, 211.)   This alone is a germane

2  reason to reject the mother's testimony to the effect that he is

3  disabled by pain. <u>See</u> <u>Lewis v. Apfel</u>, 236 F.3d at 512.  As was noted

4  above, moreover, with respect to plaintiff's mental affect, the ALJ

5  pointed out that plaintiff has not sought treatment for depression, been

6  referred to treatment for mental impairment, or been prescribed

7  psychotropic medication, (TR 137), which likewise undercuts his mother's

8  testimony that his depression has grown and is now disabling.

9      Second, the ALJ concluded plaintiff's mother is biased due to her

10  financial motive to help plaintiff obtain benefits.  (TR 137-38.)  The

11  ALJ found, and plaintiff does not contest, that his mother fully

12  financially supports plaintiff.  (TR 140.)  The ALJ concluded this gives

13  plaintiff's mother a financial incentive in his award of benefits and,

14  therefore, detracts from the credibility of her statements.  (TR 140-

15  41.)  It is the province of the ALJ, and not this court, to weigh

16  credibility, and when the evidence is susceptible of more than one

17  rational interpretation, it is the Commissioner's conclusion which must

18  be upheld.  <u>Key v. Heckler</u>, 754 F.2d 1545, 1549 (9th Cir. 1985).

19      Because the reasons set forth by the ALJ for discounting the

20  mother's testimony are based on substantial evidence and are germane to

21  plaintiff's mother, there is no material legal error here.

22      C.   **The listings (Issue # 4)**

23      Last, plaintiff contends the ALJ failed to appropriately evaluate

24  whether his back and mental impairments met or functionally equaled the

25  listings.  Specifically, he first claims that the ALJ should have found

26  his back problems met or equaled the requirements listing 1.04(A) (a

27  disorder of the spine).  Second, he urges that, when combined, his back

28

pain and mental impairments "functionally equal" a listed impairment.

i.   Listing 1.04(A)

For a plaintiff to show that an impairment meets a listed impairment, he must show that the impairment fulfills all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).  An impairment that manifests only some of the criteria of a listing, no matter how severely it does so, does not qualify.  Id.

In order to meet or equal listing 1.04(A), a plaintiff must provide evidence of the following:

* nerve-root compression characterized by neuro-anatomic distribution of pain;

* limitation of motion of the spine;

* motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

See 20 C.F.R. Pt. 404, Supbt. P, App. 1, § 1.04 (A)

The ALJ concluded that plaintiff's back impairments do not meet or equal the requirements encompassed within the third of these criteria. (TR 138.)  Specifically, the ALJ found "no evidence" of motor loss, i.e., of atrophy or muscle weakness; "no" sensory or reflex loss; and that plaintiff does not consistently test positive on the straight leg test.  (TR 138.)  Indeed, consultative examiner William C. Boeck, Jr., M.D., who examined plaintiff in 2007 and found that plaintiff has "normal" muscle strength and sensation. (TR 139, 181.) Accordingly, the ALJ's conclusion that plaintiff does not meet this listing criteria finds the support of substantial evidence in the record.  See Andrews v.

Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that the reports, analysis, and opinions of consultative physicians based upon independent clinical findings may serve as substantial evidence).

Plaintiff contends, nonetheless, that the ALJ erred and that his back problems, in fact, meet this listing criteria. He argues, first, that he "clearly" has muscle weakness based on two 2003 lower extremity tests that indicated plaintiff has lower extremity strength of 4 out of 5. (See TR 88, 96.) The court notes, however, that plaintiff does not cite any evidence suggesting this discrete test result correlates with motor loss or atrophy in his lower extremities, as is required by the listing. Indeed, the evidence overwhelmingly shows plaintiff tested normal - i.e., a 5 out of 5 - in tests of his lower extremity strength in 2003, 2004, 2005, and onward. (E.g., TR 87 (noting that plaintiff has "appropriate strength bilaterally)); TR 86, 212, 213, 214.) Even assuming, which the court does not do, that the two test results cited by plaintiff signify what plaintiff suggests, i.e., that plaintiff has impaired muscle strength, and suggest a conflict with Dr. Boeck's opinion, it is the task of the ALJ and not the court to resolve that conflict. See Key v. Heckler, 754 F.2d at 1549; Andrews, 53 F.3d at 1041.

Second, plaintiff contends there is an "obvious indication" of sensory loss, citing a report (which, the court observes, was not evidently created by an accepted medical source) that notes that plaintiff self-reported "tingling and numbness" in his extremities. (TR 98.) Plaintiff cites no competent medical evidence suggesting this phrase translates into a physician's finding of sensory loss. Indeed, the evidence of record suggests otherwise - Dr. Boeck's independent

13

1   examination led him to find plaintiff has no impairment of sensation.
2   (TR 138, 178.)

3       Finally, plaintiff contends he meets this criteria because the ALJ
4   erred in finding he did not "consistently" test positive in the straight
5   leg raise test.  Given that the ALJ's findings with respect to motor and
6   sensory loss are supported by substantial evidence, and plaintiff
7   cannot, therefore, satisfy the listing criteria, the court observes that
8   any error here would be harmless.

9       Moreover, the ALJ's finding was correct; the records are
10  inconsistent in this regard.  Plaintiff has, variously, tested positive
11  on his right leg only, on the left leg only, and, alternatively,
12  negative on both.  (Compare TR 85-87, 96, 98, 99, 110 with TR 104-05 and
13  with TR 181.)

14      In any event, the ALJ specifically declined, however, to credit the
15  results of any test, such as the straight leg raise, that was based on
16  plaintiff's subjective self-limitation because he found plaintiff to be
17  "generally unreliable." (TR 140.)  This is permissible.  See Tonapetyan
18  v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (concluding, when the
19  record otherwise supported the ALJ in discounting a plaintiff's
20  credibility, that the ALJ was entitled to reject even the opinion of a
21  treating physician premised on the plaintiff's subjective complaints).
22  Notably, plaintiff does not challenge the ALJ's credibility
23  determination.

24          ii.  Functional equivalence

25      For a plaintiff to qualify for benefits by showing that his
26  impairment or combination of impairments is "equivalent" to a listed
27  impairment, it is his burden to present to the Commissioner medical

28                          14

evidence that his impairments are equal in severity to all the criteria for the one most similar listed impairment. <u>Sullivan</u>, 493 U.S. at 531. In general, the ALJ is not obligated to discuss the combined effects of the impairments suffered by every social security plaintiff. <u>Lewis v. Apfel</u>, 236 F.3d 503, 514. Only if there is a plausible theory by which the plaintiff's impairments could combine to functionally equal a listing, <u>id.</u>, such as when the consequences of a plaintiff's mental and physical impairments are "inextricably linked," is the ALJ required to consider the combination of a plaintiff's symptoms in order to determine if the plaintiff's impairments equal the level of severity of a listed impairment, <u>see Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).

Here, plaintiff has offered no theory and offered no evidence that would show how his back problems and affective disorder combine to equal a listed impairment. Again, he does not challenge the ALJ's finding that his mental impairment does not equal the listings.

In any event, to the extent plaintiff is attempting to suggest that their combined effects render his impairments equal to the listings rejected by the ALJ, i.e., the listing for a disorder of the spine, 1.04(a), and for affective disorder, 12.04, the court notes that plaintiff cannot circumvent the requirements of a given listing by urging that his impairments "equal," rather than meet, its criteria. <u>See Lewis v. Apfel</u>, 236 F.3d at 514.

Accordingly, there is no material legal error here.

## CONCLUSION

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Sec'y of Health</u>

1  and Human Servs., 44 F.3d at 1457.

2      After careful consideration of the record as a whole, the
3  magistrate judge concludes that the Commissioner's decision is supported
4  by substantial evidence and is free from material legal error.
5  Accordingly, it is ordered that judgment be entered in favor of the
6  Commissioner.

7

8  DATED: *August 12, 2009*

9

10  CAROLYN TURCHIN
    UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**134**

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

## DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
| --- | --- |
| | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| Ricky D. Cariker | |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

The claimant filed applications for Disability Insurance Benefits and Supplemental Security Income on July 17, 2003. He alleged that he had been unable to work since March 10, 2002 due to back problems (Exhibit 2-E, p. 2). These applications were denied initially on August 22, 2003 and after reconsideration on December 10, 2003. On February 12, 2004 he then filed a timely request for a hearing before an Administrative Law Judge. Pursuant to this request, a hearing was held before me on January 12, 2005 in San Bernardino, California at which the claimant appeared and testified. He was represented by Daniel Keenan, an attorney from the Law Offices of Bill LaTour. On February 25, 2005 I then issued a decision in which I concluded the claimant retained the residual functional capacity for light work and was therefore considered not disabled pursuant to Medical-Vocational Rule 202.17 (Exhibit 3-A).

The claimant filed a request for review of this decision on March 4, 2005, which was denied by the Appeals Council on October 14, 2005, thus making my decision the final decision of the Commissioner. The claimant then filed a complaint with the United States District Court, Central District of California—Western Division (Case No. EDCV 05-01052-JWJ) which remanded the case, pursuant to sentence four of 42 U.S.C. Section 405(g), on March 20, 2007. On May 3, 2007, the Appeals Council, in turn, remanded the case for further proceedings consistent with the order of the District Court.

Pursuant to the orders of the District Court and Appeals Council, a supplemental hearing was held before me on November 2, 2007 in San Bernardino, California at which the claimant appeared and testified. He was represented by Mr. LaTour and accompanied by his mother, Arlene Applegate. Additionally, Corinne Porter testified as an impartial vocational expert.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination

See Next Page



of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2002. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act from March 10, 2002 through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

See Next Page



At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The District Court remanded this case primarily for further evaluation of the credibility of the claimant's subjective complaints, which I have addressed herein. Insofar as the District Court did not otherwise find fault with my decision, however, I hereby incorporate that prior decision by reference (Exhibit 3-A)—including my discussion of the medical records before me at that time (Exhibits 1-F through 8-F)—which remains the decision on remand, as supplemented herein.

See Next Page



Ricky D. Cariker ( ██████ )                                    Page 4 of 9-

**137**

1.  **The claimant met the insured status requirements of the Social Security Act through September 30, 2002.**

2.  **The claimant asserts he has not engaged in substantial gainful activity since March 10, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

3.  **The claimant has an impairment of his musculoskeletal system from degenerative changes in his spine that is "severe" within the meaning of the Regulations.  In giving the claimant the benefit of the doubt, I also find he has a severe affective disorder (20 CFR 404.1520(c) and 416.920(c)).**

I seriously doubt the claimant has any severe mental impairment.  There is no longitudinal history of mental health contact and no prescription of psychotropic medications even by his general practitioner, Dr. Raval, M.D.  The claimant is obviously entitled to County medical facilities, as he uses them regularly, and there are multiple County mental health clinics in the area of the claimant's residence, but Dr. Raval has never referred him there nor has the claimant sought out their assistance on his own.  If the claimant truly has a mood or affective disorder, there is not the slightest evidence it could not be readily relieved with appropriate mental health treatment.  During the hearing, the claimant simply refused to provide any testimony detailing his activities of daily living and there is no credible evidence in the record to show the "B" criteria exist for any reason.  Nevertheless, the psychiatrist who performed the most recent consultative examination found a severe affective disorder (see Exhibit 10-F), so I will defer to that, but I find this condition never approached Listing level and never deprived the claimant of a residual functional capacity for unskilled, entry level, SVP 2, object-oriented work, which is the only kind he is suited for considering his lifelong minimal attachment to any kind of work.

4.  **The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The District Court indicated that the issue of whether or not the claimant's back problems met or equaled the requirements of Listing 1.04A remained in dispute.  After reviewing the evidence, I find no reason this issue would be in dispute, as the claimant clearly does not meet the requirements of this Listing.

I first note that Listing 1.04 requires a disorder of the spine, such as a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, that has resulted in compromise of a nerve root (including the cauda equina) or the spinal cord.  Subsection A of this Listing requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising (both sitting and supine).

See Next Page



The evidence in this case fails to establish that the claimant's back problems satisfy these requirements. Radiographic evidence does establish the claimant has degenerative disc disease from L3 through S1 with foraminal stenosis. He also has pain radiating to his left lower extremity and some limitation of motion of his spine. He does not, however, have motor loss (no evidence of atrophy or muscle weakness), sensory or reflex loss, or consistently positive straight leg raising tests. For these reasons, I cannot find the claimant's back problems meet or equal the requirements of Listing 1.04A.

In regard to the claimant's mental impairment, I find this condition does not meet or medically equal the criteria of listing 12.04. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. As noted above, I find no credible evidence the "B" criteria exist for any reason, and therefore cannot find his affective disorder meets or equals the requirements of Listing 12.04. I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

5.    **After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of medium work as follows: able to lift and/or carry up to 20 pounds occasionally and up to 50 pounds occasionally; able to sit for two hours at one time and for six hours total during an eight-hour workday; able to stand for one hour at one time and for two hours total during an eight-hour workday; able to walk for 30 minutes at one time and for one hour total during an eight-hour workday; able to use his hands to reach overhead, reach in all other directions, handle, finger, feel, and push/pull on a continuous basis; and operate foot controls with either foot on a continuous basis; cannot climb ladders or scaffolds but can occasionally climb stairs and ramps; cannot stoop, kneel, crouch or crawl; can occasionally balance; cannot work at unprotected heights; cannot work around moving mechanical parts; cannot operate a motor vehicle; cannot be exposed to humidity and wetness; cannot be exposed to dust, odors, fumes or other pulmonary irritants; cannot be exposed to extreme cold or heavy; must avoid vibrations; can be exposed to loud noise (such as heavy traffic) frequently; cannot perform activities like shopping; cannot travel without a companion for assistance; cannot climb a few steps at a reasonable pace with the use of a single hand rail; is able to ambulate without using a wheelchair, walker, or two canes or two crutches; can walk a block at a reasonable pace on rough or uneven surfaces; can use standard public transportation; can prepare a simple meal and feed himself; can care for his personal hygiene; can sort, handle and use paper/files; and is mentally capable of unskilled, entry-level, SVP 2, object-oriented work.**

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,

See Next Page



based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p and have given particular weight to the opinion of William C. Boeck, Jr., M.D.(a board certified orthopedic surgeon who evaluated the claimant in August 2007 at the request of the Department of Social Services), whose assessment of the claimant's function abilities is adopted in its entirety. I find it appropriate to give weight to Dr. Boeck's assessment as it is well-supported by objective medical findings, is extremely detailed and reflective of meticulous and comprehensive consideration of the objective findings as well as the claimant's complaints, and is not inconsistent with the other medical evidence of record. In his report, Dr. Boeck noted the claimant appeared healthy, alert, and fully oriented. He stated the claimant stood up slowly, had a tendency to lean forward and to the left, and exhibited a slow, but fairly even, gait. The claimant's lumbar range of motion was somewhat limited, but he could bend over with no reversal of the lumbar lordotic curve. Dr. Boeck also noted the claimant had no difficulty assuming a recumbent position on the examining table, had essentially full range of motion in all areas other than his lumbar spine, no evidence of atrophy, no evidence of decreased muscle strength, and no impairment of sensation (Exhibit 9-F, pp. 1-5).

Updated treating records submitted since the issuance of my previous decision do not credibly contradict any of Dr. Boeck's findings. A nerve conduction study performed at Arrowhead Regional Medical Center in July 2006, in fact, failed to demonstrate any evidence of generalized or peripheral nerve entrapment of the lower extremities (Exhibit 11-F, p. 2). Furthermore, office notes from this facility reflect consistently that the claimant is in no acute distress and is neurologically intact (Exhibit 12-F, pp. 2-9). The only treatment provided to him has been provision of Norco and recommendations for exercises. Norco is obviously effective and without untoward side effects and there are multiple medications in the analgesic, non-steroidal-anti-inflammatory, and muscle relaxing armamentaria which could be used should Norco ever prove ineffective or possessive of untoward side effects. The long and faithful prescription and use certainly raises inferences of efficacy and toleration. An examination performed on June 30, 2005 noted only subjective complaints of tenderness and no neurological deficits. The claimant also admitted quire freely that Norco "deceases the pain to a tolerable level..." (Exhibit 12-F, p. 6) and this medication was consequently represcribed and has been to the present. The claimant, in fact, testified during the supplemental hearing that Norco was his only medication.

Finally, pursuant to the directive of the District Court, I have given further consideration to the credibility of the claimant's subjective complaints and continue to find that he has not provided any sufficiently credible information to establish an inability to perform work within the parameters set forth above.

In considering the claimant's symptoms, I must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity,

See Next Page



persistence, and limiting effects of the claimant's symptoms to determine the extent to which
they limit the claimant's ability to do basic work activities. For this purpose, whenever
statements about the intensity, persistence, or functionally limiting effects of pain or other
symptoms are not substantiated by objective medical evidence, I must make a finding on the
credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment
than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c)
describe the kinds of evidence, including the factors below, that I must consider in addition to the
objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has
taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or
other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other
symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or
sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain
or other symptoms (SSR 96-7p).

In this case, the claimant (and his mother) asserted the following: depression, poor concentration,
back pain, hip pain, leg pain, must lie down all day (a patent exaggeration and not required by
any established pathology), has taken Norco for three years (and admitted it was effective), and
lives in a trailer by himself. He would not detail his activities of daily living aside from asserting
he spends the entire day lying down and has not even looked for work in years. The claimant's
allegations, however, are simply not borne out by the record, which generally shows only mild
abnormalities. Furthermore, even the so-called abnormal findings such as limited range of
motion and unusual gait are all within the claimant's control and he can range as little or as much
as he wants and can affect any kind of gait he chooses. Given his general unreliability, it seems
reasonable to assume he has exaggerated his limitations during examinations.

The claimant's mother said she sees the claimant twice a week and asserted he is in pain,
depressed, and withdrawn. She admitted she fully supports him since he has no income and
apparently does not even qualify for Food Stamps or General Relief since he is not receiving
those readily granted County welfare benefits. Her financial motivation to get rid of him as her

See Next Page



responsibility and onto the public dole is obviously strong and detracts from the credibility of her statements.

Accordingly, after considering the evidence of record, I find that while the claimant's back problems could reasonably be expected to produce some of his alleged symptoms, the statements of the claimant and his mother concerning the intensity, persistence and limiting effects of these symptoms are exaggerated, unsupported by established pathology, by the minimal nature of his treatment, and by his admission to his treating physician that he gets along just fine on Norco which makes his subjective discomfort "tolerable," and simply do not credibly establish any different conclusion than those reached herein.

**6.   The claimant cannot perform his past relevant work (20 CFR 404.1565 and 416.965).**

The vocational expert testified the claimant has past minimal work as a car washer, a job she described as medium and unskilled.  She further testified the assessment at Exhibit 9-F, pp. 9-14 describe a range of medium work.  As the job of car washer appears to require the ability to perform a full range of medium work, I thus find he is not capable of meeting the demands of that job.

**7.   The claimant was born on April 3, 1959 and has been considered a younger individual at all times relevant to this decision (20 CFR 404.1563 and 416.963).**

**8.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.   Transferability of job skills is not an issue because the claimant's past jobs have all been unskilled (20 CFR 404.1568 and 416.968).**

**10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

See Next Page



Ricky D. Cariker                                           Page 9 of 9

                                                                    **142**

If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.25. Similarly, if he had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of work at these levels has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative medium and light occupations such as packer/packager, sewing machine operator, and electronics worker—all learnable by less than 30 days of on-the-job training and demonstration.

Based on the testimony of the vocational expert, I thus conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. The burden shift is therefore met by vocational expert testimony and the use of the Medical-Vocational Rules—specifically 203.25 and 202.17—as guides and a framework for a decision of "not disabled."

**11. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

<u>DECISION</u>

Based on the application for a period of disability and disability insurance benefits filed on July 17, 2003, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on July 17, 2003, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

_F. Keith Varni_
F. Keith Varni
Administrative Law Judge

1 0 DEC 2007
Date

sr

EXHIBIT

13

## SOCIAL SECURITY ADMINISTRATION
### Office of Hearings and Appeals

### DECISION

**IN THE CASE OF**

**CLAIM FOR**

Period of Disability,
Disability Insurance Benefits, and
Supplemental Security Income

Ricky D. Cariker
(Claimant)

_____
(Wage Earner)

██████████
(Social Security Number)

### INTRODUCTION

The claimant filed applications for Disability Insurance Benefits and Supplemental Security Income on July 17, 2003. He alleged that he had been unable to work since March 10, 2002 due to back problems. These applications were denied initially on August 22, 2003 and after reconsideration on December 10, 2003. On February 12, 2004 he then filed a timely request for a hearing before an Administrative Law Judge. Pursuant to this request, a hearing was held before me on January 12, 2005 in San Bernardino, California at which the claimant appeared and testified. He was represented by Daniel Keenan, an attorney from the Law Offices of Bill LaTour.

### ISSUES

The general issue is whether the claimant is entitled to a period of disability, Disability Insurance Benefits, and eligible for Supplemental Security Income payments under Sections 216(i), 223, and 1614(a)(3)(A), respectively, of the Social Security Act. The specific issue is whether he is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

### EVALUATION OF THE EVIDENCE

The claimant was born on April 3, 1959 and is currently 45 years old. He was 42 years old on his alleged date of onset. He has a tenth grade education and past relevant work experience as a car finisher at a car wash.

With regard to the claim for a period of disability and Disability Insurance Benefits, the claimant met the nondisability requirements set forth in Section 216(i) of the Social Security Act as of his



alleged onset date, and through September 30, 2002.  Therefore, in order to establish entitlement to Disability Insurance Benefits, he must establish disability on or prior to this date.

In order to determine whether the claimant is disabled, a five-step evaluation must be performed pursuant to 20 CFR §§404.1520 and 416.920.  This decision is made in conformity with such evaluation process.

The claimant asserts that he has not worked since March 10, 2002.

A medically determinable impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities (20 CFR §§404.1520 and 416.920).  The Regulations require that if a "severe" impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis (20 CFR §§404.1523 and 416.923).

The medical evidence in this case indicates that the claimant has an impairment of his musculoskeletal system from degenerative changes in his spine that is "severe" within the meaning of the Regulations, but not "severe" enough to meet or medically equal, either singly or in combination, Listing 1.04 or any other impairment listed in Appendix 1, Subpart P, Regulations No. 4.

Furthermore, after giving careful consideration to all of the evidence of record, I find that the claimant retains the residual functional capacity to perform light work that does not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling.  This finding is based on the assessment of State Agency review physicians David A. Haaland, M.D (Exhibit 2-F) and Thu N. Do, M.D. (Exhibit 4-F) and is generally consistent with the evidence of record.  Indeed, in reviewing the record, I note the paucity of medical records and lack of any objective findings which would indicate that more restrictive limitations are warranted.·

In considering the evidence, I note that the claimant has been seen periodically at Arrowhead Regional Medical Center, primarily by general practitioner Niren Raval, D.O., where he has been treated conservatively.  The claimant was seen initially on April 11, 2003 at which time he reported having a past history of left hip pain that resolved and current right hip pain and tingling in his feet.|  On examination, there was some crepitus in the knees, but no spinal deformities or abnormalities noted, no tenderness on palpation of his hips and buttocks, no limitations in range of motion, and a strong hand grip and good leg strength.  Despite the lack of objective findings, the claimant was diagnosed with "probable" degenerative joint disease with radiculopathy.  The claimant was given pain medication and advised to stop drinking (he reported drinking a quart of beer per day) and was told to follow-up if there was no improvement in his pain (Exhibit 3-F, p. 18).

On April 21, 2003 the claimant complained of right-sided back pain with difficulty walking (Exhibit 3-F, p. 16).  X-rays were taken of his lumbar spine which revealed degenerative arthritis with osteoporosis and mild anterior wedging of L2 (Exhibit 3-F, pp. 14, 17).  On May 7, 2003 the claimant reported increased back pain and an examination revealed positive straight leg raising on the right and 4/5 strength.  Dr. Ravel concluded the claimant was unable to perform



his "regular line of work" until his acute injury resolved and that he should undergo trigger point injections (Exhibit 3-F, p. 13).

Dr. Raval was subsequently contacted by the claimant's mother (a registered nurse at the County Hospital) who asked why "nothing has been done for her son" regarding his back pain. Dr. Ravel informed her that he recommended non-steroidal anti-inflammatory medications, stretching, physical therapy and trigger point injections, and that if such conservative measures failed, further tests and treatment would be considered (Exhibit 3-F, p. 11).

On June 25, 2003 the claimant underwent an MRI of his lumbar spine which showed multilevel degenerative disc disease from L3 to S1 with predominantly neural foraminal stenosis (Exhibit 3-F, p. 9).

On July 10, 2003 the claimant was seen in the emergency room due to an exacerbation of his back pain and he was referred to an orthopedic spine clinic (see Exhibit 3-F, pp. 5, 7, 8).

On September 3, 2003 Dr. Raval noted the claimant was not taking his Neurontin as recommended and had not yet been evaluated at the orthopedic clinic (Exhibit 3-F, p. 3).

On September 18, 2003 the claimant had an epidural and was referred for an EMG (Exhibit 7-F, p. 2).

On January 16, 2004 the claimant saw Dr. Raval for medication refills and reported "feeling a little bit better" (Exhibit 8-F, p. 3). At that time, straight leg raising was positive on the right, but his strength was 5/5 in his lower extremities (Ibid).

On April 6, 2004 the claimant returned to Dr. Raval, again for medication refills. He reported that Norco was helping relieve his pain. On examination, the claimant had 5/5 strength in his lower extremities and no grow weakness in his lower legs (Exhibit 8-F, p. 2).

On May 4, 2004 Dr. Raval noted that a decision had not been made regarding the need for surgical intervention and that the claimant reported his pain was controlled with medication (Exhibit 5-F, p. 3). On September 14, 2004 Dr. Raval apparently completed paperwork for the claimant, indicating he could not work due to his low back pain and degenerative joint disease. At this time, he did not provide a specific assessment of the claimant's functional capacity and, given his previous statements, was likely referring merely to the claimant's ability to perform his previous work, but not all work (see Exhibit 5-F, p. 2).

On October 10, 2003, however, Dr. Raval did complete a form on which he checked boxes indicating the claimant was extremely limited and unable to perform even sedentary level work (see Exhibit 6-F, pp. 1-3). Given that Dr. Raval's treating notes reflect a lack of concern for the claimant, that he had to be prompted by the claimant's mother to undertake necessary diagnostic studies, that he still has not referred the claimant for electrodiagnostic studies, and that other than prescribing medication and three days of physical therapy, he provided no treatment for the claimant, I find his assessment to be the typical egregiously exaggerated and accommodative form seen here on a regular basis and entitled to little weight. Rather, I find the assessment of



the State Agency physicians to be entirely reasonable given the objective medical findings and thus give their assessment significant weight.

The claimant's testimony credibly establishes no less of a residual functional capacity. The claimant asserted pain from neck to hips, down the legs to the calves, foot tingling, taking Neurontin, Norco, and Tylenol #3 (which helps his pain but makes him drowsy) and denied any activity in the trailer where he lives by himself. His self-assessment is greatly exaggerated in that he maintains he cannot stand for more than ten minutes, walk more than a few feet, lift more than 15 to 20 pounds, or sit for more than one hour. He also asserted that he cannot drive, has no vehicle, and no California driver's license, although he admitted his license was taken away due to his failure to pay child support, not due to a physical inability to drive. I also note that the claimant's earnings record reflects minimal earnings. He asserted he last worked in 2002 and said the absence of postings on his earnings record from 1999 through 2001 was because he was self-employed and did not bother to file income tax returns or pay income or self-employment taxes, again suggesting his propensity toward misrepresentation and dishonesty. Accordingly, in considering the claimant's testimony, I find no basis to warrant the establishment of more restrictive limitations and I thus reiterate my determination that the claimant remains capable of performing work at the light exertional level that does not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling.

Based upon the claimant's residual functional capacity, I must next determine whether the claimant can perform any of his past relevant work. The phrase "past relevant work" is defined in the Regulations at 20 CFR §§404.1565 and 416.965. The work usually must have been performed within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and meet the definition of substantial gainful activity.

In this case, I find it reasonable to assume that the claimant's past work was probably performed at greater than a light exertional level and that he would therefore be unable to meet the demands of any past work. Therefore, the burden shifts to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with his residual functional capacity, age, education and work experience.

To this end, I note that the claimant has been considered a younger individual at all times relevant to this decision (20 CFR §§404.1563 and 416.963), that he has a limited education and what appears to be an unskilled work background. He thus meets the criteria of Medical-Vocational Rule 202.17 which, used as a guide and framework for decision-making, supports a determination of "not disabled."

In relying on this Rule, I note that the Medical-Vocational Guidelines are used as a framework for a decision when a claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any nonexertional limitations. The Medical-Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has the exertional residual functional capacity to perform substantially all (as defined in Social Security Ruling 83-11) of the seven primary strength demands required by work at the given level of exertion (as defined in Social Security Ruling 83-10) and there are no nonexertional limitations. When all of the criteria



Ricky D. Cariker                                    Page 5 of 6

**17**

of a Medical-Vocational Rule are met, the existence of occupations in the national economy is met by administrative notice. Because the claimant has the exertional capacity to perform substantially all of the requirements of light work, and considering his age, education, and work experience, a finding of "not disabled" is therefore supported by application of Medical-Vocational Rule 202.17 and I thus conclude that the claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§404.1520(g) and 416.920(g)).

## **FINDINGS**

After careful consideration of the entire record, I make the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through September 30, 2002.

2. The claimant asserts that he has not engaged in substantial gainful activity since March 10, 2002.

3. The claimant's musculoskeletal system impairment is considered "severe" based on the requirements in the Regulations 20 CFR §§404.1520(c) and 416.920(b).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations regarding his limitations are credible only to the extent consistent with the findings reached herein.

6. The claimant has the residual functional capacity to perform light work that does not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§404.1565 and 416.965).

8. The claimant has been considered a "younger individual" at all times relevant to this decision (20 CFR §§404.1563 and 416.963).

9. The claimant has a limited education (20 CFR §§404.1564 and 416.964).

10. The claimant's past work appears to be unskilled work and he would therefore not have any acquired work skills that would be transferable to jobs within his current residual functional capacity (20 CFR §§404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 CFR §§404.1567 and 416.967).



12. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.17, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13. The claimant's capacity for light work is substantially intact and has not been compromised by any non-exertional limitations. Accordingly, using the above-cited Rule as a framework for decision-making, the claimant is not disabled.

14. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§404.1520(g) and 416.920(g)).

## DECISION

It is my decision that, based on the application filed on July 17, 2003, the claimant was not disabled prior to his date last insured (September 30, 2002) and is not entitled to a period of disability and Disability Insurance Benefits, under Sections 216(i) and 223, respectively, of the Social Security Act.

It is my further decision that, based on the application also filed on July 17, 2003, the claimant is not eligible for Supplemental Security Income payments under Sections 1602 and 1614(a)(3)(A) of the Social Security Act.

F. Keith Varni
Administrative Law Judge
FEB 09 2005
Date

sr

